May it please the Court, my name is Nakisa Serega and I'm representing the petitioner in these removal proceedings. She seeks review of the order of removal entered by the Board of Immigration Appeals in her case. Counsel, would you please keep your voice up? Certainly. Thank you. The record in this case shows not only one instance, but three instances where three different governmental agencies made clear errors of law. And the result was that the petitioner's application was pretermited based on those legal errors. Counsel, just so procedurally we have this case straight, there is a denial of a motion to reconsider, right? Correct. And a denial of a motion to reopen. That's correct. Could you discuss those separately and tell us what errors you assert in each of those separately so we can understand your argument? Yes, Your Honor. The first petition for review, the underlying decision, was a denial of a motion to reconsider, which the petitioner filed before the Board of Immigration Appeals concerning a determination by the immigration judge that she was statutorily ineligible for the relief she sought, which was cancellation of removal. And in that motion to reconsider, the petitioner argued that the judge had found, had relied on Section 101F of the Immigration and Nationality Act to find that the petitioner was per se statutorily barred from having a finding of good moral character. Which we can review. And if it were a discretionary determination, we could not review. That's correct, Your Honor. The language of the board's decision when it denied the motion to reconsider is interesting in that it seems that they realized that the immigration judge made an error but do not want to state so. They state, if you look at page 174 of the record, even if we were to find error by the immigration judge, such error would not be prejudicial. But there could be no greater prejudice than to have a petitioner's application be pre-terminated without having a hearing on the merits of her application based on an incorrect section of the law, in fact, a nonexistent section. The word pre-terminated was used by the immigration attorney, not by the judge. There is another, maybe you don't agree, but do you agree that there's another possible interpretation to what the I.J. did, which is to say that he found that the respondent lacked good moral character because she falsely claimed, not testified, but claimed that she was an American citizen? That's correct. The petitioner relied on the fact that the petitioner claimed she was a United States citizen when attempting to enter the United States. However, it is clear that if the judge goes beyond the Section 101F of the Immigration and Nationality Act, he then must not stop the analysis there and go into a discretionary determination weighing both positive and adverse factors. A false claim to U.S. citizenship would be one of the adverse factors that the judge would be required to look at. Does he have to say, I am exercising my discretion, or does he have to simply act? The judge does not have to say he's exercising his discretion. However, the language in the decision shows that the judge actually said the applicant lacks good moral character as stated in Section 101F. Therefore, she is statutorily barred from the relief zone. So your argument is that he used the per se category on a factor that does not fit within the per se categories. That's correct, Your Honor. And the immigration judge did refer, he cited to the statute's bestowal of discretionary authority. Why then shouldn't we assume that he was using his discretion? The immigration judge referred to that section that says he's not precluded from finding adverse moral character, even if it's not specifically listed in Section 101F. However, in that case, he must show that he has weighed the positive and the adverse factors. There has been some balancing of the factors before he concludes that she lacks good moral character. Here, there's no evidence of that. The only evidence of that is that she is not precluded from finding adverse moral character, even if it's not specifically listed in Section 101F. The only factor he considered was an adverse one, and it was the false claim to citizenship. What case requires him to articulate the weighing of the adverse and favorable factors? I'm somewhat familiar with that from sentencing cases, but is there an immigration case which requires that? There is a case, the case of Torres-Guzman v. INS, which was cited in the opening brief at Pages 11, 15, 17, 18, and 19 of the brief. That's a 1986 case concerning a suspension of deportation case where there was a brother and sisters, natives and citizens of Mexico, who got false U.S. birth certificate, applied for U.S. passports, and attempted to enter the United States using those fraudulent documents. And in that case, this honorable court granted the petition because there was a failure to consider all of the factors. And the court rejected the suggestion that conduct not, in fact, falling within the categories under Section 101F would support, without any consideration of other relevant counterbalancing factors, a conclusion of a lack of good moral character. Now, although that was a suspension of deportation case, that can also be applied to the case at bar, which is cancellation of removal. Did you want to address your other argument, counsel? Yes. Regarding the motion to reopen, the petitioner's second petition for review, which was filed here, was based on a denial from the board of a motion to reopen, she filed, in order to reinstate her asylum claim, not only her asylum, but also her claim for withholding of removal and protection under the Convention Against Torture. But, counsel, you didn't file an asylum application with your motion to reopen. Is that correct? That's correct, Your Honor. That's because there was an application for asylum that already was filed by the petitioner. But it was withdrawn in the first proceeding. It was withdrawn through her former counsel, and it was because, at the time, the facts did not exist that would support her well-founded fear of persecution. Those facts occurred afterwards, after the conclusion of the hearing. So all the more reason that an asylum application should have been attached, if the first had been withdrawn. Although it had been withdrawn, the petitioner would be asking to reinstate that withdrawn asylum application. And the failure to attach an application itself should not be fatal to her claim, especially when the credible evidence on record suggests that petitioner and her two United States citizen daughters would be subject to physical harm and possibly even death. And that is what I'm trying to say.  I'm saying that the petitioner's claim is a crime of abuse and murder upon return to the petitioner's country of origin. And this Honorable Court and the Board have held in certain cases that the failure to attach an application for asylum would not be fatal to that claim. The first application for asylum, did she make the claim that she would be persecuted because of her membership in a family, in a social group with the family? No, she did not. So that was a new claim, right? I mean, legal claim. That was a new theory of the asylum claim. It was based on the fact that occurred afterwards. But how would the Board know that if there were no asylum application attached? Well, there was an asylum application in the record. But it didn't want to have those facts in it. That's the point that Judge Bair was making. If that asylum application did not have the pertinent facts in it, then how would that serve as notice of what the claim is? Well, the petitioner attached an affidavit to the motion to reopen that explained the new facts that would form the basis of her new claim. And that can be found as an attachment to the motion to reopen. Her affidavit is at page 27 of the administrative record. And she explains in detail, you know, the chronology of all the facts that happened and specifically the event that occurred, which would give rise to her well-founded fear of persecution. Counsel, what case authority are you relying upon to support your argument that failure to comply with 8 CFR Section 1003.2c1 may be excused? There's a case from this honorable court, Constantinova v. INS. And that is mentioned in our brief, in Petitioner's Brief at page 24 of the brief. But in Constantinova, the government joined the application to reopen. It didn't oppose it, as was the situation here. In Constantinova, the government did not join. The government failed to respond at all. Constantinova refers to a BIA case called Matter of Yewon Bosen. In that case, the government had joined in the motion, and therefore the board held that failure to attach the application would not be fatal. Do you have a case where the government opposed the application, the motion, and the failure to attach an application was excused? No, there is no such case. But Constantinova discusses the fact that it would be illogical to draw a distinction between a case where the government fails to respond and where the government This is one step further. This is where the government actually opposed the motion. That's correct. Counsel, you've exceeded your time. We'll give you a minute for rebuttal. May it please the court. My name is Luis Perez, and I represent the respondent in this case, the Attorney General. Good morning, Your Honors. Your Honor, just to go with the jurisdictional arguments first, there are three agency decisions in this case, and the government is claiming that the board's affirmance without opinion of the immigration judge's initial denial of cancellation of removal is not properly before this court because the petitioner never filed a timely petition for review. So the court would not have jurisdiction over that decision under INA 242B1. Now, with respect to the February 2004 denial of the motion to reconsider, it is the government's contention that the immigration judge did in fact deny cancellation of removal, both as a discretionary determination, and as a motion. And as a per se determination with respect to good moral character. So let me ask you, what language in the IJ decision are you relying upon to support your argument that there was a discretionary determination? On page 243 of the administrative record, the government is relying on the immigration judge's specific citation. It's page 243 of the administrative record. The government is relying on the specific citation by the immigration judge of the casual provision that is stated in INA 101A43F. And the judge specifically says that that statutory provision specifically states, and I'm reading from the immigration judge's decision, Your Honor, that the fact that any person is not within any of the foregoing classes should not preclude the finding that for other reasons such person is or was not of good moral character in the case of an alien who makes a false statement for claim of citizenship. Now, the government contention is by the immigration judge specifically citing to the casual provision, which gives the agency the discretionary determination outside of the per se prongs that appear in the casual provision. Then the immigration judge, as a matter of fact, did make a discretionary determination. Counsel, isn't it true that normally when immigration judges make discretionary determinations, they couch it in that manner? Normally they would, Your Honor, however, because the immigration judge specifically cited to the casual provision, it would not be unreasonable to conclude that by citing to it, he was relying on it. So your argument is that any time an immigration judge cites to the catch-all provision, that is per se a discretionary determination? Because this is in the context of a motion to reconsider. And the review over the motion to reconsider is whether the BIA's interpretation is arbitrary and capricious. The government's contention is that the BIA's interpretation of the IJ decision in this case was reasonable. The problem is the BIA said if there was error, which implies that there may have been some error. What do you make of that language? Because the way the BIA interpreted the decision, Your Honor, was that the IJ made both a per se and a discretionary determination. And the BIA said to the extent that it made a per se determination, it's wrong. However, there is an independent basis that the IJ also relied. And with respect to that other basis, we concur. We find no error of law or no error of fact. Counsel, the difficulty I have with this, as articulated by opposing counsel, usually when there's a discretionary determination made, there's a weighing of the positive factors and the negative factors, and there's none of that in this decision. So how do you respond to that point? Yes. Counsel does cite to Torres Guzman. And in that decision, the court did make that weighing of the equities. And as a practical matter, that happens in most of the IJ decisions that have discretionary determinations. The IJ also discusses the positive factors and the negative factors and determines in his or her discretion whether or not the negative outweighs the positive. But that goes as to whether the immigration judge's decision is to the extent that there's an adequate reasoning with respect to the discretionary determination. That doesn't go as to whether there was a discretionary determination. And as How do we know if the IJ didn't tell us he was exercising his discretion and there's no weighing of the equities, then how do we know that there was a discretionary determination? Again, the government can only point to the specific citation of the provision. And I will also point to the case that I found a 28-J letter in Fernandez in the last page in Fernandez, page 603. The court did make a distinction in Fernandez that it is presumed that the IJ consider all the evidence in the record. And if you look at the administrative record, Your Honor, on page 283, that is the brief that was filed by Petitioner's Counsel at the time when the IJ was considering whether or not to dismiss the cancellation of removal application. And in that brief, Petitioner's Counsel did point to all of the equities. So it has to be presumed that the IJ took into account those equities. Now, with respect to whether, by failing to discuss those equities in the immigration judicial decision, all that that creates, Your Honor, is the fact that the IJ didn't adequately reason his conclusion. But because this is a discretionary determination, unfortunately, under INA 242A2B1, the court would not have jurisdiction as to that discretionary determination. Kennedy. If it was discretionary, but you do admit the IJ misread a portion of Section F. When he referred to the statement or claim of citizenship in text, he was referring to a misreading of a paragraph which would have exempted the discretionary determination. Correct. And the BI recognized that. The BI recognized that and said she doesn't fall within any of the per se qualifications, and therefore, we see that the IJ made a discretionary determination. The government's position is that that construction of the IJ's decision was not unreasonable by the board, and because the board's decision is the one that is properly before the court for purposes of review, because the IJ decision was never appealed, and the only thing in terms of what the court should look is what was argued in the motion to reconsider for purposes of what is properly before the court, then the court's position is that the court should find that the BI's determination was reasonable. Well, we have to look at both of them because the BIA decision refers to the IJ decision. Correct. It's not independently analyzed. Correct. But the standard of review is somewhat different because it's in the context of a motion to reconsider. Do you have any cases comparable to this one, i.e., where the IJ simply referred to the discretionary section but said nothing and did no weighing or balancing? I handle cases like that every day, practically, Your Honor. In most situations, it's because it's a normal decision and the IJ is making a determination for the parties. But do you have a cited case? Do you have one from a circuit court or from the BIA that addresses this kind of circumstance? No, Your Honor. I can look, and if I find one, I can file a 28-J letter. If the court would want that, I have, you know. Mr. Perez, you made a remark that there's a different standard of review in reviewing the BIA's decision, which was not timely appealed, and reviewing the motion to reconsider. Yeah. What's the difference in the standard of review? Well, in a motion to reconsider, Your Honor, a difference in a review of the motion to reconsider. A review of a motion to reconsider is whether the BIA is determined, whether the BIA reasonably exercised its discretion in construing the IJ's decision. Yeah. Or, simply put, whether the BIA's conclusion was arbitrary and capricious. Thank you. Thank you, Your Honor. My time is practically up. All right. Thank you, counsel. Thank you. We'll give you one minute for rebuttal, if you'd like. The Respondent points to the language in the judge's decision, specifically mentioning that famous catch-all provision. Well, the judge in the decision stops his quote of that section, saying, in the case of an alien who makes a false statement or claim of citizenship, and stops short there. But if one were to read the rest of that sentence, it actually talks about an exception made in the case of an alien who had one naturalized or United States citizen parent, who was a lawful permanent resident before the age of 16, who believed at the time that she was a United States citizen. So that catch-all provision in that section that the judge quotes, it doesn't provide another per se bar in case of a false statement. Couldn't the judge have just seen that and said, that says it much better than I could, and I'm just going to appropriate that language for a moment? If that was the case, then it's, again, the Petitioner would argue that it's a misinterpretation of that section. That section only provides for certain exceptions in the case of certain aliens who make false claim of United States citizenship. On a basis for finding a lack of good moral character. That's your argument. Yes. Yes, Your Honor. Counsel, you've exceeded your time. Okay. Thank you very much to both counsel for a well-argued case. This case is submitted for decision by the court. The next case, Albert v. Chevron, has been submitted on the briefs. The next case on calendar for argument is Smith v. Rakakis. Thank you.
judges: D.W. Nelson, Rawlinson, Bea